IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Sarah Tevonian,

        Plaintiff,                              Case No. 2:25-cv-941
                                                               Judge James L. Graham
      v.                                              Magistrate Judge Chelsey M. Vascura

Medtronic Inc., *et al.*,

        Defendants.

<u>Opinion and Order</u>

      Plaintiff Sarah Tevonian originally filed this action on June 25, 2025 in the Court of Common Pleas for Franklin County, Ohio. She alleged that she was wrongfully terminated from her employment because her former employer, defendant Medtronic Inc., and her supervisor, defendant Michael Scarcelle, discriminated and retaliated against her on the basis of her age and gender. All of her claims were brought under Ohio law.

      On August 19, 2025, Scarcelle removed this action to federal court, with the consent of Medtronic. Removal was based on diversity jurisdiction, as Tevonian is an Ohio citizen, while Medtronic is a Minnesota corporation with its principal place of business in Minnesota and Scarcelle is a Pennsylvania citizen. *See* 28 U.S.C. §§ 1332, 1441.

      This matter is before the Court on two separate motions filed by plaintiff. The first is plaintiff's motion to remand, and the second is plaintiff's combined motion for entry of default against Medtronic, for default judgment, and to strike Medtronic's answer. For the reasons stated below, plaintiff's motions are denied.

**I.      Motion to Remand**

      Plaintiff argues that the case should be remanded to state court because Scarcelle failed to timely file a notice of removal after being served with the state court complaint on or about June 30, 2025. *See* 28 U.S.C. § 1446(b)(1). Defendants oppose the motion, arguing that removal was timely because plaintiff failed to perfect service on Scarcelle.

      Under 28 U.S.C. § 1446(b)(1), a notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

1

In determining whether and when service of process was made prior to removal, the Court looks to the state's rules of civil procedure. *See Dernis v. Amos Fin.*, 701 Fed. App'x 449, 453 (6th Cir. 2017); *Ramsey v. Deurmier*, No. 1:13–cv–806, 2014 WL 617643, at *2 (S.D. Ohio Feb. 18, 2014). The parties agree that Ohio Rule of Civil Procedure 4.3 permits service on a nonresident (who otherwise has sufficient contacts with Ohio to comport with due process) by certified mail. *See* Ohio R. Civ. P. 4.3(B), 4.1(A)(1)(a).

Service by certified mail to a business address is effective so long as it is "reasonably calculated to reach" the intended recipient. *Akron-Canton Reg'l Airport Auth. v. Swinehart*, 62 Ohio St. 2d 403, 406, 406 N.E.2d 811, 814 (Ohio 1980) ("We believe therefore that certified mail service sent to a business address can comport with due process if the circumstances are such that successful notification could be reasonably anticipated."). A court should examine the "particular facts" of each case in determining whether certified mail to a business address is reasonably calculated to reach the interested party. *Id.*, 62 Ohio St. 2d at 407, 406 N.E.2d at 814. Key factors in making the determination are whether the defendant has a physical presence at the business address and, if so, the frequency of defendant's physical presence. *See id.*

Here, plaintiff attempted to effect service on June 27, 2025 by sending the summons and complaint by certified mail to Scarcelle, in care of Medtronic at Medtronic's operational headquarters in Minneapolis. *See* Doc. 1-3 at PAGEID# 41. The address had no specific room or office number for Scarcelle. Rather, the service packet was sent to the exact same address that the service packet for Medtronic, the corporate defendant, was sent. *See id.* at PAGEID# 43.

Defendants have shown that Scarcelle has no physical presence at Medtronic's Minneapolis headquarters. According to Scarcelle's declaration, he resides in Pennsylvania and works as a traveling sales manager for Medtronic in its East region, which covers portions of the East Coast and does not include Minnesota. *See* Scarcelle Decl., ¶¶ 2–4. He spends most of his time traveling the East region and, when not traveling, he works remotely from his home in Pennsylvania. *Id.*, ¶ 5. Scarcelle does not have an office or desk at Medtronic's headquarters in Minneapolis or at any other Medtronic location in Minnesota. *Id.* His superiors work in North Carolina and Florida. *Id.*, ¶ 6. He has never traveled to Medtronic's headquarters in Minneapolis in his 11 years as an employee. *Id.*, ¶ 7. Scarcelle has traveled to the Minneapolis region on average of two or three times per year to go to other Medtronic locations, including one which provides training. *Id.*, ¶¶ 8–9.

Thus, Scarcelle has never stepped foot in the place where plaintiff directed service. Under less extreme facts than these, courts in Ohio have held that service at a business address was not reasonably

calculated to reach the intended recipient. For instance in *Swinehart*, the Ohio Supreme Court held that service at a business address was not sufficient because defendant's primary business office was in another city and he visited the business location where service was attempted only "sporadically," or about two to three times per month. *Swinehart*, 62 Ohio St. 2d at 407, 406 N.E.2d at 814. In *Bell v. Midwestern Educ. Serv., Inc.*, the court found service at a business address to be invalid where the individual visited the address just twice a year. 89 Ohio App. 3d 193, 202, 624 N.E.2d 196, 202 (Ohio Ct. App. 1993) ("The business address should not simply be the address of the party's business, it should be the address where the party himself has his own office, or at least where he is continually and regularly physically present most of the time."). *See also Thompson v. Kerr*, 555 F. Supp. 1090, 1094 (S.D. Ohio 1982) ("In light of *Swinehart*, it would be anomalous to hold that service of the original complaint in the within matter was sufficient, when Defendants herein visit the Winters business address only once a month, while the individual sought to be served in Swinehart visited the business address two or three times a month."); *Cap City Dental Lab, LLC v. Ladd*, No. 2:15-CV-2407, 2015 WL 7179663, at *3 (S.D. Ohio Nov. 16, 2015), report and recommendation adopted, No. 2:15-CV-2407, 2015 WL 7888826 (S.D. Ohio Dec. 4, 2015). *Compare with Stoneking v. Meyers*, No. 20 CVA-10-6614, 2023 WL 6444579, at *9 (Ohio Com.Pl. Mar. 15, 2023) (holding that service to business address where defendant "worked five days per week, eight hours per day" was reasonably calculated to reach her).

      Plaintiff does not dispute these facts but argues that service to Medtronic's headquarters was reasonably calculated to reach Scarcelle because Medtronic has protocols in place to receive and deliver mail sent to headquarters. This argument is unconvincing, as the protocols relate to delivery of mail to Medtronic's Minneapolis-area facilities, and there is no evidence demonstrating that there is a mail-forwarding system to employees working in other geographic regions. Medtronic hires a courier to pick up mail (800 pieces per day, on average) from the United States Postal Service and deliver it to a mail sorting station at the Minneapolis headquarters. *See* Villa Decl., ¶¶ 3–8. The courier signs for all mail, including certified mail, once a day on an electronic tablet. *Id.*, ¶ 6. At the mail sorting station, a third-party vendor sorts and records each piece of mail. *Id.*, ¶ 8. Mail is then delivered to mailstops at the appropriate Medtronic facilities in the Minneapolis area. *Id.*, ¶ 9.

      Plaintiff is unable to show that a procedure was in place by which it could be anticipated that mail sent to Medtronic's headquarters would reach Scarcelle. Plaintiff's own conduct as an employee reporting to Scarcelle is telling, in terms of how one could reasonably anticipate reaching him. There is no evidence that she ever sent items to Scarcelle by way of the Minneapolis headquarters. Instead, she sent work-related items directly to him at his Pennsylvania residence. *See* Scarcelle Decl., ¶ 11.

As it turned out, the service packet addressed to Scarcelle sat unclaimed at one of Medtronic's Minneapolis-area facilities for over 30 days before Medtronic's legal department became aware of plaintiff's claim that she had sent it and ordered a search of the facility on August 8, 2025. *Id.*, ¶¶ 11–12. This case provides support for the approach followed by courts in Ohio to "look suspiciously" at service attempted at a business address because of the "inherently greater risks involved in attempting certified mail at a business rather than at a residence by virtue of the oftentimes numerous intermediate, and frequently uninterested, parties participating in the chain of delivery." *Swinehart*, 62 Ohio St. 2d at 406, 406 N.E.2d at 814.

Accordingly, the Court finds that plaintiff's attempt at service upon Scarcelle by certified mail at Medtronic's headquarters was not reasonably calculated to reach him. Having not been properly served in late June or early July 2025, as plaintiff claims he was, Scarcelle's removal of the action to federal court on August 19, 2025 was timely, and the motion to remand is thus denied.

## II. Combined Motion for Entry of Default, for Default Judgment, and to Strike the Answer

Plaintiff moves for an entry of default against Medtronic on the grounds that it did not timely plead or otherwise defend after being served by certified mail on June 30, 2025. *See* Fed. R. Civ. P. 55(a). Plaintiff also moves for default judgment against Medtronic and to strike the answer Medtronic filed on August 7, 2025.

The Court denies the combined motion in its entirety. Apart from the fact that the motion is procedurally improper, *see Medina v. Columbus State Cmty. Coll.*, No. 2:08-CV-154, 2008 WL 4411522, at *2 (S.D. Ohio Sept. 29, 2008) (explaining that a plaintiff must first obtain an entry of default from the Clerk of Court before moving for default judgment), the Court finds that even if Medtronic were in default, it has shown good cause for setting the default aside. *See* Fed. R. Civ. P. 55(c).

In evaluating good cause to set aside a default, the Court considers whether the default was willful, if plaintiff would be prejudiced by the set-aside, and whether defendant has a meritorious defense to present. *See Dassault Systemes, SA v. Childress*, 663 F.3d 832, 838–39 (6th Cir. 2011). Here, plaintiff does not dispute that she would not be prejudiced by a set-aside or that Medtronic has a meritorious defense. Plaintiff focuses entirely on the argument that Medtronic engaged in culpable conduct which led to the default. Upon a review of the evidence and arguments, the Court cannot find that Medtronic engaged in willful wrongdoing. The Court's review is done in light of the "general preference" for handling cases on the merits – resolving doubts in favor of the defaulting party and being reluctant to impose "the harsh sanction of default." *Id.* at 841 (internal quotation marks omitted). Medtronic has put forth evidence supporting a finding that it had a good faith (even if

4

mistaken) belief in the month of July 2025 that it had not been properly served. Its belief was based upon: an inaccuracy on the state court's docket indicating that Medtronic had not been served; confusion on the part of Medtronic's legal department over the certified mail item number corresponding to the service packet directed to Medtronic; and a misunderstanding on the part of Medtronic's legal department about the propriety of service by certified mail under Ohio law. Considering the circumstances, the Court is unwilling to attribute Medtronic's delay in appearing and filing an answer to bad faith or willfulness.

### III. Conclusion

Accordingly, plaintiff's motion to remand (Doc. 15) is DENIED and plaintiff's combined motion for entry of default, for default judgment, and to strike the answer (Doc. 16) is DENIED.

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

DATE: December 5, 2025